IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

DENNIS DELOACH

VS.                                                    CIVIL ACTION NO. 1:06CV316 – DAS

MICHAEL J. ASTRUE
Commissioner of
Social Security

## MEMORANDUM OPINION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of claimant Dennis Deloach for disability benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. In accordance with the provisions of 28 U.S.C. § 636©), both parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including an order for entry of a final judgment. Therefore, the undersigned has authority to issue this opinion and the accompanying final judgment. Having duly considered the respective positions of the parties, the court finds that the ALJ's decision should be affirmed.

## I. FACTUAL AND PROCEDURAL HISTORY

On September 5, 2002, the claimant filed an application for disability benefits and supplemental security income benefits, alleging an onset date of January 8, 2002. The application was denied initially and upon reconsideration. On December 14, 2004, an administrative law judge ("ALJ") issued a decision unfavorable to the claimant, and on October 19, 2006, the Appeals Council denied the claimant's request for review. The ALJ's decision is now ripe for review under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The claimant was born on August 15, 1963 and was forty-one years old on the date of the hearing decision. He previously worked as a drywall finisher and laborer. With his application

for benefits, the claimant contends he can no longer work because of severe back pain, neck pain, and arm pain. Nevertheless, after consideration of the medical evidence, the subjective testimony at the hearing, and the testimony of a vocational expert, the ALJ found that the claimant was not disabled. The ALJ found the claimant had the residual functional capacity to perform a range of work at the light level of exertion, that is, he could lift twenty pounds occasionally and ten pounds frequently; he could stand and walk for six hours and could sit for six hours in an eight-hour workday; and he could only occasionally engage in climbing, balancing, stooping, crouching, kneeling, or crawling. Based on this RFC, the vocational expert testified that the claimant could perform light unskillled work as a photo copy machine operator, as a crimper, and as a deliverer of merchandise.

The claimant appeals the ALJ's decision making three arguments: First, the claimant argues the ALJ erred when he failed to discuss but nevertheless found the claimant's impairment did not meet or equal in severity Medical Listing 1.04(A). Second, the claimant argues the ALJ erred when he failed to credit the opinion of a consulting orthopedist. And third, the claimant argues the ALJ erred when he failed to order a psychological consultative examination.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2]

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).

[2] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

First, the claimant must prove he is not currently engaged in substantial gainful activity.[3] Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[5] Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[6] If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering claimant's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work.[8]

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means

---

[3] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2000).

[4] 20 C.F.R. §§ 404.1520(c), 416.920(c) (2000).

[5] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2000). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525, 416.925 (1998).

[6] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2000).

[7] 20 C.F.R §§ 404.1520(f)(1), 416.920(f)(1) (2000).

[8] *Muse*, 925 F.2d at 789.

3

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found . . . where there is a 'conspicuous absence of credible choices' . . . ." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

### III. DISCUSSION

#### 1. Listing 1.04(A)

Initially, the claimant contends the ALJ erred at step three of the five-step process when he failed to articulate why the claimant's impairment did not meet § 1.04(A) under the Listing of Impairments. The claimant cites no binding authority for the proposition that the ALJ is required to articulate the reasons supporting his finding under step three. Thus, the sole question before the Court is whether substantial evidence supports the ALJ's finding that the claimant did not have an impairment under § 1.04(A). *See Selders v. Sullivan*, 914 F.2d 614 (5th Cir. 1990) (determining whether substantial evidence supported the ALJ's finding, though appellant argued

that ALJ erred in failing to explain why appellant did not meet step three requirements).

Section 1.04(A) provides:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
>
> With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A) (2008). In his opinion, the ALJ noted twice that the claimant did not meet or equal any Medical Listing. After reviewing the opinion, the Court finds there was substantial evidence for the ALJ to determine that the claimant did not have an impairment that met the Listing.

With his appeal, the claimant provides a chart breaking down into separate elements, the requirements needed to meet the Listing. On the corresponding side of each element listed, the claimant then provides what he contends to be evidence introduced to support each element. While the Court concedes there is evidence that could support a contrary conclusion, the ALJ considered such evidence, gave it due weight, and found that credible evidence supported a different conclusion. *See Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) ("[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."). Specifically, the claimant relies heavily on the MRI results from August and November 2000, but these results were examined closely by Dr. Tom McDonald who found that "The patient's pain is not compatible with his findings on MRI. I would not recommend surgery." In addition, Dr.

Robert Buckley found in October 2002, that a lumbar x-ray showed only mild degenerative changes. Like Dr. McDonald, Dr. Buckley also opined that the claimant's back pain was "out of proportion to the physical findings . . . ." Dr. Lynn Stringer, an orthopedist who examined the claimant in March 2003 also commented that the MRI in 2000 showed only a "mild degenerative bulging disk at L5-S1 with no significant neural encroachment." And as with Drs. McDonald and Dr. Buckley, Dr. Stringer also suspected the claimant was not fully credible, writing "[b]ecause of the duration of symptoms and perhaps excess somatization and/or malingering, I do not believe that surgical intervention is in any way indicated."

Next, the claimant points to his alleged "limitation of motion of the spine," referring to various exam reports showing flexion to thirty degrees, forty-five degrees, or sixty degrees. During one appointment with Dr. Farukh Quereshi, apparently the claimant stated he simply could not flex at all. These various inconsistencies go directly to the credibility of the claimant that practically every examining physician noted. The ALJ also noted a lack of credibility in his opinion, explaining:

> The undersigned finds the claimant's subjective complaints and hearing testimony greatly lacking in credibility. The claimant's allegations of debilitating daily pain at the level of nine on a ten-point scale, of stringent functional limitations wherein he can stand or sit for only fifteen to twenty minutes at a time, and of stringent restrictions in the activities of daily living wherein he can perform essentially none of the customary household chores appear greatly disproportionate to the objective medical evidence, which as summarized herein presents primarily negative findings. Numerous treating and examining physicians have expressed significant reservations regarding the credibility of the claimant.

It is well established that "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had the opportunity to observe whether the person seems to be disabled." *Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988) (quoting *Elzy*

6

*v. Railroad Retirement Bd.*, 782 F.2d 162, 166 (5th Cir. 1986)). Consequently, because the ALJ and virtually every treating and examining physician believed the claimant lacked credibility, the inconsistent abilities displayed by the claimant with respect to the limitation of the motion of his spine are of little value to his claim.

The claimant also puts great emphasis on his alleged "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." As with the limitation of motion of his spine discussed *supra*, the claimant's credibility plays a role in this determination as it does in all of the various tests performed by the treating and examining physicians. With respect to "motor loss," the claimant points first to Dr. McDonald's November 30, 2000 report that he had "weakness to dorsi flexion on the left." However, the ALJ also noted that Dr. McDonald in August 2000, found: "Strength and tone are normal in all groups. Atrophy is absent." Dr. McDonald also referred the claimant to Dr. Richard Sharp who subsequently found "no spasm or atrophy," and – again – because the claimant's subjective complaints did not correlate with the test findings, Dr. Sharp stated he could not rule out malingering. The claimant also notes that Dr. John Brophy reported motor strength of 4/5 with give-way component secondary to back and leg pain. However, as the ALJ explained, Dr. Brophy also "concluded significantly that he saw no reason why the claimant could not return to the performance of full duty without any restrictions." The claimant also refers to Dr. Stringer's note that he had "vague decreased sensation to pinprick over the entire left foot and lateral half of the right foot." Dr. Stringer, however, also found that this "really does not seem to fit an anatomical pattern." In other words, Dr. Stringer, as discussed, believed his symptoms may be caused by "excess

7

somatization and/or malingering."[9]

Finally, the claimant contends that evidence to support the "involvement of the lower back, positive straight-leg rasing test (sitting and supine)" is provided by Drs. Sharp, Buckley, Gassaway, Stringer, Brophy, and Quereshi. Significantly every one of these doctors except Drs. Gassaway and Queshi suspected the claimant of malingering. Moreover, Dr. Sharp found "[s]traight leg raise sitting bilaterally is to 80 degrees and negative." Later, Dr. Sharp found "[s]itting in supine straight leg raises are to 80 degrees bilaterally with no pain. And as discussed extensively *supra*, the record shows numerous instances in which the treating and examining physicians opine that the subjective complaints do not correlate with the objective test results. As to whether there is "involvement of the lower back," there does not appear to be any dispute that the claimant does indeed have lower back pain; the dispute is only whether it is disabling back pain, and the Court finds substantial evidence to support the ALJ's determination that the claimant is not disabled as defined by the Social Security Act.

## 2. Dr. Newell

With his second argument, the claimant contends the ALJ erred when he failed to give proper weight to the opinion of the consulting orthopedist, Dr. Bruce Newell. Specifically, the claimant argues the ALJ erred when he discounted Dr. Newell's opinion without first going through the six-factor analysis provided at 20 C.F.R. § 404.1527(d). The Court finds, however, that the ALJ's decision was supported by substantial evidence, and the ALJ was not required to go through all six factors in the face of competing first-hand medical evidence. *See Newton v Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *see also Walker v. Barnhart*, 158 Fed. Appx. 534 (5th

---

[9]The Court is also aware the claimant told Drs. Gassaway and Brophy that Dr. McDonald recommended surgery when this was patently untrue.

8

Cir. 2005) (interpreting *Newton* as not requiring the six-step analysis in the face of competing first-hand medical evidence).

In this case, Dr. Newell completed a Medical Source Statement indicating that the claimant could occasionally lift less than ten pounds, but he could not assess how much the claimant could frequently lift. He limited the claimant to standing or walking for four hours in an eight-hour work day for no more than forty-five minutes at a time, with the same restrictions in sitting. He opined the claimant could never climb, balance, stoop, crouch, kneel, or crawl and noted restrictions in overhead reaching and pushing and pulling. He also indicated that the claimant should not work with heights, moving machinery, and vibration. Finally, Dr. Newell stated that "some, not all" of the limitations he indicated were normally expected from the type and severity of the diagnosis in the claimant's case, and he said that "some, not all" of the diagnoses in the claimant's case were confirmed by objective findings. More importantly, he stated that "to some degree" he based his opinion of the claimant's limitations on his subjective complaints.

After examining the ALJ's decision, it is clear that he did not wholly discount Dr. Newell's opinion; he merely gave it limited weight. The ALJ went over Dr. Newell's findings in great detail, and made it clear he was giving it limited weight because as Dr. Newell stated, some of his findings were not based on objective tests. Additionally, Dr. Newell stated that some of his findings were based on the claimant's subjective complaints of pain, and the ALJ had substantial evidence to find that the claimant lacked credibility with respect to these subjective complaints. The ALJ was perfectly within his rights to make this decision. *See, e.g., Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that ALJ properly rejected examining physician's opinion on grounds that it was premised on claimant's subjective complaints, the

ALJ discounted claimant's credibility, and the record supported the ALJ's credibility finding).

The claimant also objects to the ALJ's wording that Dr. Newell "expressly and repeatedly cited in support of his assessed limitations the claimant's subjective reports of pain . . . ." In support of his position, the claimant argues that Dr. Newell only stated that his findings were based "to some degree" on the claimant's subjective complaints. The Court sees this a distinction without a difference, and finds the ALJ had substantial evidence to give Dr. Newell's opinion only limited weight based on the voluminous evidence described in the ALJ's opinion in contrast to Dr. Newell's report.

Finally, the claimant objects to the ALJ's reliance on Dr. Anderson's opinion that was not part of the record, and thus, the claimant claims violated his right to due process. However, this application is the claimant's second application, and Dr. Anderson's opinion was utilized in a hearing during his first attempt to obtain disability benefits. In other words, the claimant was fully aware of Dr. Anderson's opinion, and to argue the ALJ's reliance violated his right to due process borders on the frivolous. Moreover, to describe the ALJ as having *relied* on Dr. Anderson's opinion strains the interpretation of "reliance." With respect to Dr. Anderson's opinion, the ALJ wrote:

> The undersigned accords limited weight to the examination and assessment of Dr. Anderson. His examination and assessment appear worthy of less weight than the consistent reservations expressed by the numerous other treating and examining physicians.

In other words, the ALJ did not rely on Dr. Anderson's opinion, and because the claimant was aware of the opinion, the Court finds no violation of due process.

### 3. Psychological examination

Finally, the claimant contends the ALJ erred when he did not order a consultative

psychological examination after Dr. Robert Buckley stated in his report: "I would suggest psychological evaluation to determine how much somatization is going on in this patient." The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). This Court will find that the ALJ's decision was not supported by substantial evidence if the claimant demonstrates "(1) that the ALJ failed to fulfill his duty to adequately develop the record, and (2) that the claimant was prejudiced thereby." *Brock*, 84 F.3d at 728. A consultative evaluation, however, is only required "when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment." *Id*. The decision to order a consultative examination is within the ALJ's discretion. *See Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). Isolated comments are insufficient, without further support, to raise a suspicion of non-exertional impairment." *Brock*, 84 F.3d at 728.

In the present case, the claimant did not list any psychological condition whatever in his application for benefits and has never sought treatment for such. The only reference to a need for an evaluation in this voluminous record is Dr. Buckley's suggestion. The Court finds that this is precisely the type of isolated comment that is insufficient to raise a suspicion of non-exertional impairment. *Id*. Consequently, the ALJ was not required to order a consultative examination in order to fulfill his duty to develop the record adequately.

## IV. CONCLUSION

Because the ALJ thoroughly evaluated every medical report in evidence and because those reports in conjunction with the claimant's lack of credibility constitute substantial evidence to support his findings, this Court finds the decision that the claimant is not disabled should be affirmed. The Court will enter a judgment consistent with this opinion.

This 24th day of September 2008.

                                                  /s/ David A. Sanders
                                                  UNITED STATES MAGISTRATE JUDGE